UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KWADIR FELTON,** | Civ. No. 2:11-7492 (WJM) |
| Plaintiff, | |
| | **OPINION** |
| v. | |
| **CITY OF JERSEY CITY, JERSEY CITY POLICE CHIEF THOMAS J. COMEY, JERSEY CITY POLICE DIRECTOR, SAMUEL JEFFERSON, JERSEY CITY POLICE SERGEANT THOMAS McVICAR, JERSEY CITY POLICE OFFICER DWAYNE DOWELL, JERSEY CITY POLICE OFFICER CARLOS LUGO, ABC CORPORATIONS (#1 thru #10), JOHN DOES (#1 thru #10), and JANE DOES (#1 thru #10),** | |
| Defendants. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

This is an excessive force case. The undisputed facts establish that Defendant Jersey City Police Sergeant Thomas McVicar shot Plaintiff Kwadir Felton after Felton pointed a gun into a car where Sergeant McVicar was hiding. Defendants Sergeant McVicar, the City of Jersey City, Jersey City Police Chief Thomas K. Comey, Jersey City Police Director Samuel Jefferson, Jersey City Police Officer Dwayne Dowell, and Jersey City Police Officer Carlos Lugo move without opposition for summary judgment under Federal Rule of Civil Procedure 56. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, the motion for summary judgment is **GRANTED**.

**I.  BACKGROUND**

The following facts are undisputed. In early 2010, Jersey City Police Officer Sergeant Thomas McVicar was assigned to a New Jersey State Police drug investigation called "Operation Wetlands." City of Jersey City Defendants' Statement of Undisputed

1

Material Facts ("DSM") ¶¶ 3, 9, 10, ECF No. 28-1.  As part of the investigation, Sergeant McVicar and others conducted surveillance on various targets.  *Id.* ¶ 12.

On January 10, 2010, Sergeant McVicar's surveillance team learned that a red Acura TL—a car that was familiar to the team—was going to be involved in a drug transaction.  *Id.* ¶ 16.  Sergeant McVicar proceeded to monitor the Acura from the back seat of his unmarked personal vehicle.  *Id.* ¶¶ 18-20.  The rear windows of Sergeant McVicar's vehicle were tinted; the front windows were not.  *Id.* ¶ 22.

While Sergeant McVicar was surveilling the Acura TL, Plaintiff Felton leaned against Sergeant McVicar's rear window and attempted to look inside the vehicle.  *Id.* ¶ 23.  Sergeant McVicar reached for his police radio but accidentally dropped it.  *Id.* ¶ 24.  Felton reacted by "looking fully into the vehicle."  *Id.* ¶ 24.  Felton then bent down out of view, and Sergeant McVicar heard the racking of the slide of a gun.  *Id.* ¶ 25.  Felton reappeared in the window, this time holding his gun.  *Id.* ¶ 26.  Felton then looked into the vehicle's front non-tinted windows.  *Id.*  After repeatedly looking through the windows, Felton pointed his gun into the interior of the car.  *Id.* ¶ 27.  Felton then looked up and down the block as if to make sure no one was watching.  *Id.*  Fearing for his life, Sergeant McVicar shot Felton a single time.  *Id.* ¶ 28.

On May 19, 2011, a state Grand Jury returned a 40-count indictment against Felton and 12 other individuals.  *Id.* ¶ 29.  Count 35 (possession of a weapon for an unlawful purpose) charged that:

> Kwadir Felton on or about January 10, 2010 . . . knowingly did possess a firearm with the purpose to use it unlawfully against the person or property of another . . . with the purpose to use it unlawfully against Sergeant Thomas McVicar . . . .

*Id.* ¶ 32.  Count 36 (aggravated assault) charged that:

> Kwadir Felton on or about January 10, 2010 . . . knowingly, under circumstances manifesting extreme indifference to the value of human life . . . knowingly pointed a loaded, Hi-Point Model C9, 9 millimeter handgun at Sergeant Thomas McVicar . . . under circumstances that manifested an extreme indifference to the value of a human life . . . .

*Id.* ¶ 33.

On December 25, 2011, Felton filed the instant case alleging violations of his civil rights.  ECF No. 1.  Defendants answered the Complaint on April 30, 2012.  ECF No. 9.  Subsequently, on November 14, 2013, Felton was convicted on all counts in his state criminal trial.  DSM ¶ 34.

On June 12, 2014, Defendants moved for summary judgment on all counts.  ECF No. 28.  Felton did not oppose the motion.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant it entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A factual dispute is genuine if a reasonable jury could find for the non-moving party, and a fact is material if it will affect the outcome of the trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding summary judgment motion, the Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

Felton's failure to respond to the motion does not automatically mean summary judgment is appropriate. *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). However, Felton's failure to respond does mean that Defendants' statement of facts is deemed undisputed. Local Civil Rule 56.1(a).

## III. DISCUSSION

The Complaint contains nine counts. Counts 1 and 3 are claims for excessive force under 42 U.S.C. § 1983 ("Section 1983") and the New Jersey Civil Rights Act. Counts 2 and 4 are claims for false arrest under Section 1983 and New Jersey common law. Count 5 is a claim for malicious prosecution under New Jersey common law. Counts 6 and 7 are claims for negligent infliction of emotional distress and intentional infliction of emotional distress under New Jersey common law. Counts 8 and 9 are claims for negligent supervision and training, and negligent hiring and retention under New Jersey common law. Defendants move for summary judgment on all counts.

### A. Counts 1 and 3: Excessive Force

Count 1 is a claim for excessive force under Section 1983. Count 3 is a claim for excessive force under the New Jersey Civil Rights Act. Under *Graham v. Connor*, federal law courts look to the Fourth Amendment's "objective reasonableness" requirement to determine whether an officer used excessive force to make an arrest or some other seizure. 490 U.S. 386, 395 (1989). New Jersey state courts also apply *Graham* to excessive force claims brought under the New Jersey Civil Rights Act. *State v. Ravotto*, 169 N.J. 227, 236 (2001) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

Combining standards set forth in *Graham* and *Tennesse v. Garner*, 471 U.S. 1 (1985), which addressed the use of deadly force, the Third Circuit has formulated the following test to for analyzing excessive force claims based on deadly force[1]:

---

[1] Officer McVicar used deadly force when he shot Felton, even though Felton ultimately survived. *See In re City of Philadelphia Litig.*, 49 F.3d 945, 966 (3d Cir. 1995) (relying on the Model Penal Code's definition of "deadly force" as "force which the actor uses with the purpose of causing or which he knows to create a substantial risk of causing death or serious bodily harm").

> Giving due regard to the pressures faced by the police, was it objectively reasonable for the officer to believe, in light of the totality of the circumstances, that deadly force was necessary to prevent the suspect's escape, and that the suspect posed a significant threat of death or serious physical injury to the officer or others?  In determining the reasonableness of all degrees of force . . . factors to consider include the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

*Abraham v. Raso*, 183 F.3d 279, 289 (3d Cir. 1999) (quoting *Graham*, 490 U.S. at 396).

The Court finds, based on the undisputed facts, that it was objectively reasonable for Officer McVicar to believe that deadly force was needed to prevent Felton's escape and to prevent Felton from using deadly force.  Once Felton drew his gun, looked up and down the block, and pointed his gun into the interior of Sergeant McVicar's vehicle, it was objectively reasonable to believe that unless Sergeant McVicar shot Felton, Felton would shoot—and possibly kill—Sergeant McVicar, and then flee.  *Cf. Romero v. Board of County Comm'rs*, 60 F.3d 702, 704 (10th Cir. 1995) (granting summary judgment on excessive force claim where police officer shot suspect because police officer "reasonably feared for his life").  The Court will **GRANT** summary judgment on Counts 1 and 3.

### B.     Counts 2 and 4: False Arrest

Count 2 is a claim for false arrest under Section 1983.  Count 4 is a claim for false arrest under New Jersey law.  A plaintiff cannot prevail on a false arrest claim under Section 1983 or New Jersey law if plaintiff's arrest was supported by probable cause.  *See Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988) ("The proper inquiry in a Section 1983 claim based on false arrest is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense."); *Mesgleski v. Oraboni*, 330 N.J. Super 10, 24 (App. Div. 2000) ("The existence of probable cause is a defense to false arrest if it serves to validate the arrest.").  The undisputed facts in this case establish that Felton drew a gun and pointed it into the car where Sergeant McVicar was conducting his surveillance.  As such, the undisputed facts establish that there was probable cause to arrest Felton.  Accordingly, the Court will **GRANT** summary judgment on Counts 2 and 4.

### C.     Count 5: Malicious Prosecution

Count 5 is a claim for malicious prosecution.  Under New Jersey law, "[a] malicious prosecution action arising out of a criminal prosecution requires proof [of the following elements]: (1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the

proceeding, and (4) that it was terminated favorably to the plaintiff." *Lind v. Schmid*, 67 N.J. 255, 262 (1975). Because Felton was convicted at trial, the criminal action was not "terminated favorably" to Felton. Accordingly, the Court will **GRANT** summary judgment on Count 5.

### D. Counts 6 and 7: Infliction of Emotional Distress

Count 6 is a claim for intentional infliction of emotional distress. Count 7 is a claim for negligent infliction of emotional distress. Defendants move for summary judgment on both counts, arguing that they are immune from suit under the New Jersey Tort Claims Act. Defendants' argument is persuasive.

The New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. 59:3-3 ("Section 3-3") provides that "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment." N.J.S.A. 59:3-3. To qualify for good faith immunity under Section 3-3, a public employee must prove either 'objective reasonableness' or that he acted with 'subjective good faith.'" *Alston v. City of Camden*, 168 N.J. 170, 186 (2001) (quoting *Fielder v. Stonak*, 141 N.J. 101, 132 (1995)) (immunizing officer who shot woman during a police chase). However, a public employee will not be immunized where he or she exhibits willful misconduct. N.J.S.A. 59:3-14(a).

Sergeant McVicar is entitled to good faith immunity under Section 3-3 because the undisputed facts establish that he acted in an objectively reasonable manner: Felton pointed a gun into a car where Sergeant McVicar was hiding, and Sergeant McVicar responded by defending himself. The undisputed facts do not in any way suggest willful misconduct on the part of Sergeant McVicar. Accordingly, the Court will **GRANT** summary judgment on Counts 6 and 7.

### E. Counts 8 and 9: Negligent Supervision and Training & Negligent Hiring and Retention

Count 8 is a claim for negligent supervision and training. To survive summary judgment on a negligent supervision claim, a plaintiff must present evidence that a defendant's employer "knew or had reason to know of the particular unfitness, incompetence, or dangerous attributes [of an employee]." *Smith v. Harrah's Casino Resort of Atl. City*, No. 855–12T2, 2013 WL 6508406, at *3 (App. Div. Dec.13, 2013). Felton has failed to present any such evidence. Similarly, because Felton points to no evidence indicating that a failure to train caused Sergeant McVicar to act as he did, Felton cannot prevail on a failure to train theory. *See Stoby v. Egg Harbor Twp.*, 754 F. Supp. 2d 716, 721 (D.N.J. 2010). Accordingly, the Court will **GRANT** summary judgment on Count 8.

Count 9 is a claim for negligent hiring and retention. To prevail on a negligent hiring and/or retention claim, a plaintiff must establish, *inter alia*, that an employer "knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm

to other persons." *Di Cosala v. Kay*, 91 N.J. 159, 173 (1982).  Because the undisputed facts fail to establish anything about what Sergeant McVicar's employer knew or had reason to know about Sergeant McVicar, the Court will **GRANT** summary judgment on Count 9.

## IV.   CONCLUSION

For the foregoing reasons, the Court will **GRANT** the motion for summary judgment.  An appropriate order follows.

/s/ William J. Martini<br>**WILLIAM J. MARTINI, U.S.D.J.**

**Date: July 7, 2014**